Ruled accordingly.

## WALKER *vs.* SQUIRES and MILLS.

The payee of a bill of exchange knowingly sells standing timber not his own to the drawer, who is to manufacture it into boards and deliver these to the acceptors, upon which the bill is drawn and accepted. The owner of the timber forbids the drawer's cutting the timber. Even though he proceed and get timber, and manufacture and deliver it to the acceptors, the latter are not bound because of the fraud of the payee.

And the acceptors can not be regarded as in funds.

*It seems* that, even if there were no fraud, the act of the owner of the timber was equivalent to an eviction, and the failure of consideration was complete.

The case of *Vibbard* v. *Johnson*, 19 Johns., 77, 79, considered.

ASSUMPSIT by payee against acceptors of a bill of exchange for $100. The bill was drawn by one Wood, and " accepted subject to the arrangement with C. B. Hatch, which is to pay this before the closing of the navigation." The bill was assigned to Hatch, to apply, when paid, on a debt due from the plaintiff to Hatch. The defence turned on the consideration as between the drawer and acceptors. The consideration was lumber to be manufactured by Wood (the drawer) from standing timber, for which he had contracted with the plaintiff at the price of $220. The logs were at the time of the contract supposed by Wood to stand on the plaintiff's land ; it turned out that all of the timber, except 15 or 20 logs, stood off the plaintiff's land. The agreement between Wood and the defendants was that he

was to manufacture all the timber into clap-boards, and to let the defendants have the boards. A part of the consideration of this purchase by the defendants was the acceptance by them of Wood's draft, on which this suit was brought. Verdict for defendants. Plaintiff moved for a new trial on a case.

*N. Hill, Jr.*, for plaintiff

*J. Ellsworth*, for defendants.

*By the Court*, COWEN, J. There is nothing to show that Wood ever manufactured a single clap-board from these logs. The clap-boards which he drew to the defendant's store at the lake, were not made from the timber in question. Wood paid about $100 to the plaintiff out of the $220; he then cut one hundred logs, when he was forbidden by the owner to proceed farther. Whether he took away the logs, notwithstanding the prohibition, does not explicitly appear by the case; but whether he did or not, only 15 or 20 logs of all he got for the $100 paid and the order, came from the plaintiff's land. If Wood did get the trees, he was a trespasser unless he got liberty from Ireland (the owner); for before he got any thing away, it was ascertained where the trees stood by a survey, acknowledged by the plaintiff, before the bill was drawn or accepted. Wood must not only have been a trespasser, but a willful trespasser, unless he got leave of Ireland, the owner. I should hardly presume that he went on and got the logs after such a notice, without that expressly appearing in the case. The contrary, I should suppose, was to be presumed; and that if he did get them, it was under some new contract with Ireland. Were it material, however, to see whether the timber was got by Wood as a trespasser, and manufactured and delivered to the defendants, it might be safer to send the cause down to ascertain that fact definitely.

I can not accede that there is any doubt on the case of the fact that Walker had no right to the trees. It was said, in argument, that he might have purchased them of Ireland,

Walker v. Squires.

or why should Wood have bought of him, or the defendants have accepted on a fund to be made out of the trees. The answer is, that the defendants showed every thing necessary in the first instance to fix the title in Ireland; viz., that he owned the land. He, therefore, was, prima facie, the owner of the trees. If Walker had bought them of him, the onus probandi, in the ordinary course, would fall upon him to show his purchase of the trees. Very little, if any thing, can be expected of Wood and the defendants, who were strangers to Walker's title. Surely such an obvious answer as a purchase from Ireland, would have occurred to the plaintiff; for he had full notice that his title would be contested. Not only does Ireland own the land, but he claims the trees and gives notice to Walker's vendee, who had already paid $100 on this trespass fund; and the defendants are now called on to pay the balance. All that any of them have got from the plaintiff is the timber out of which the 15 or 20 logs were made. If Wood has got the balance of the timber in defiance of Ireland, and delivered the avails to the defendants, I am sure they are in a much worse condition than if they had got nothing; for I doubt whether Ireland may not subject them to pay him the gross market value which they may have obtained for the lumber.

It is said the defendants are in funds; and can not take up the quarrel for Wood, the drawer. Were this so, it would doubtless be an answer; but I don't so read the case. The fund of the defendants lay in the Ireland timber; in boards manufactured from that timber; which I can not but regard as fraudulently imposed upon them through Wood by the plaintiff, who knew, when the bill was drawn, that he had no title. But whether this be so or not, as to the fraud, it is clearly a case of want of funds in the hands of the drawees and acceptors; and this is always a defence between the original parties, or against a holder not bona fide; which includes a holder who has himself paid no consideration. The plaintiff has not paid any thing; but by what I collect from the case, he has paid worse than nothing.

The only serious question in the case then arises out of

D.—II. 4

the general language of Spencer, Ch. J., in *Vibbard* v. *Johnson*, 19 Johns., 77, 79. Is it correct to say that in general a failure of title in the vendor, shall be no defence in an action for the goods sold, without eviction? Such certainly is the language of the Chief Justice. The case itself comes short of the present. Both parties there acted with full knowledge; and I should hardly suppose that the court would apply the rule to a case of fraud. I do not see, in this case, that the parties were equal in their condition. The plaintiff knew his failure of title. Wood and the defendants might have known the same, but it is too much to presume that they would join in the plunder of Ireland, with their eyes open. There is no proof that they acted with knowledge; and I can not presume it. And even conceding a full fund thus fraudulently pushed off into the hands of the defendants, I doubt the application of *Vibbard* v. *Johnson*. I should not feel much difficulty in presuming that Wood, on receiving notice from Ireland, desisted, and thus suffered an actual eviction of all the fund which was intended for the acceptors. But I have rather chosen to look at this as doubtful on the case, and to suppose that he may have taken the timber in defiance of Ireland's prohibition. Still I could look upon it as not much less an eviction. Ireland is found making an entry, survey and claim; and forbidding the drawer to cut any more. It was not necessary in order to constitute an eviction, that an action should be brought and the value recovered, or replevin and the specific thing; nor that Wood should be turned off by the shoulder. He is forbidden by the owner, and if he goes forward in getting the timber, he is a conscious trespasser. Ireland has asserted his right by an entry on the land, if that were necessary, and a claim and a prohibition. I should think this equivalent to an ejectment, or replevin. It is an entry; a recaption, if you please. An entry on the tenant by another having right, suspends the rent and may destroy the claim of the landlord; so that holding the case perfect in its analogy to one of use and occupation, as Chief Justice Spencer thinks *Vibbard* v. *Johnson* was, there has been an expulsion; such, I think, as to subvert the relation of vendor and vendee between the

plaintiff and Wood; and by consequence, we have seen, the acceptors were without funds.

On the whole, I think a new trial must be refused.

I feel no difficulty upon any of the points made, except that which relates to the question of funds.

New trial denied.